## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS  DIVISION

| | | |
|---|---|---|
| ALCURTIS CELESTINE, ET AL | * | CIVIL ACTION NO. 05-1251 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| AARON RENTS, INC. AND BROCK ROBERTS | * | BY CONSENT OF THE PARTIES |

## REASONS FOR JUDGEMENT

On October 3-4, 2007, the parties tried the remaining claims of plaintiffs, Quentin Chapman ("Chapman") and Everette Robertson ("Robertson"), under 42 U.S.C. § 1981, to the court without a jury. At the close of the evidence, the Court took the case under advisement, and allowed the parties to file post-trial briefs. [rec. docs 139, 148, 149, 150].  After considering the evidence and the post-trial briefs, the Court finds that the plaintiffs have not met their burden of proof.  Accordingly, the claims filed by Quentin Chapman and Everette Robertson against defendants under 42 U.S.C. § 1981 are **DISMISSED WITH PREJUDICE**.

## Complaint

On July 14, 2005, Chapman and Robertson, along with plaintiffs, Dwayne Patrick Terrance, Jamal Mills, Alfred Flugence,  John Alfred, Jr., and Alcurtis Celestine, filed suit for racial discrimination based on their race, black, in

violation of Title VII, 42 U.S.C. § 1981, and Louisiana law.  On September 11, 2007, the Court granted summary judgment in favor of defendants, dismissing the state law and federal discrimination claims filed by Dwayne Patrick Terrance, Jamal Mills, Alfred Flugence, John Alfred, Jr., and Alcurtis Celestine, as well as Chapman's and Robertson's claims under Title VII and Louisiana law.[1]  [rec. docs. 112-120].  The claims filed by Chapman and Robertson for discriminatory termination under § 1981  were set for trial.

_____The following constitute my Findings of Fact and Conclusions of Law pursuant to Rule 52 (a), Federal Rules of Civil Procedure.

## Findings of Fact

*Quentin Chapman*

_____Chapman, an African-American male, was hired by defendant, Aaron Rents, Inc. ("ARI"), on June 3, 2002 as a sales manager at the store in Crowley, Louisiana.  Shortly afterwards, Chapman was transferred to the Customer Accounts Manager ("CAM") position.  About a year later, on July 1, 2003, Chapman was promoted to General Manager of the Crowley store.

---

[1]The claims filed by Alcurtis Celestine and Jamal Mills under the EPPA, 29 U.S.C. § 2002 *et seq*., were tried on October 3, 2007, and dismissed with prejudice by Judgment dated October 4, 2007. [rec. doc. 138].

On July 7, 2004, defendant, Brock Roberts ("Roberts"), was promoted to Regional Manager over the Western Louisiana Region, which included the Crowley store managed by Chapman.  At the time of Roberts' promotion, the performance of the stores in the Western Louisiana Region was below ARI performance standards.  After Roberts' promotion, he met one-on-one with the general mangers in his region, including Chapman.  During this meeting, Roberts told Chapman that the store needed to gain new customers.

The evidence strongly indicates that Roberts was aggressive, assertive, abrasive, rash and potentially abusive, in his relationship with the employees under his supervision.  However, the evidence is uncontroverted that Roberts was never heard to use racially derogatory or discriminatory language.  The record is totally devoid of other direct evidence of racial animus on Roberts' part.

Shortly after Roberts' arrival, Chapman reported problems with his sales manager, Chad LeBlanc, to Roberts.  Chapman also called ARI's 1-800 discrimination line on July 23, 2004, to report his complaints about LeBlanc, as well as Roberts' failure to take any action.  (Exhibit 13).  Roberts testified that he investigated Chapman's complaints about LeBlanc, and determined that the complaints did not warrant any disciplinary action.

3

On July 31, 2004, Roberts met with Chapman at the Crowley store. Roberts told Chapman that he was doing a poor job, because he was not growing the store adequately. That same day, Roberts wrote up a Counseling Form on Chapman for averaging only three new customers per month instead of averaging 25 new customers per month. The counseling form went on to note that continued performance deficiencies would result in further disciplinary action including termination. (Exhibit 14).[2]

According to Aaron's Sales & Lease Ownership Store Performance Report for the Crowley store,  from July, 2003, to July, 2005, the Crowley store lost an average of 43 customers during the third quarter of 2003, 20 during the last quarter of 2003 and the first quarter of 2004, 25 during the second and third quarters of 2004, 63 during the last quarter of 2004 and the first quarter of 2005, and 2 during the second quarter of 2005.[3]  (Exhibit 21).  Additionally, the Performance Comparison between Quentin Chapman, Everette Robertson, and David Richard reflects that the regional average customer gain between January and August, 2004 never equaled 25.  (Exhibit 31).  In other words, at no time did the store gain 25

---

[2]Chapman testified that Roberts told him that he, Roberts, would not hold Chapman to the 25 new customer requirement.  Roberts denied telling this to Chapman.

[3]Roberts referred to the customer delivery number in column 6 of the report as the relevant number for customer gains.  However, that column refers to deliveries, not customer gains as set forth in column 8.

customers in any month either before or after Chapman's tenure as general

manager, and the regional average was below that number.  (Exhibits 21, 31).

On August 3, 2004, Chapman called ARI's 1-800 discrimination line

reporting that he had been targeted to be fired. (Exhibit 15).  Three days later, on

August 6, 2004, Chapman received a second written Counseling Form from Brock

Roberts, this time on the grounds that Chapman's store had failed an audit on July

28 and 29.  (Exhibit 16).  On August 31, 2004, Roberts called Divisional Manager

Larry Scarletta and Divisional CAM Richard Woodley (who is African-American)

to discuss the fact that Chapman had not met his goals, and recommended

terminating Chapman. All agreed that Chapman should be terminated.  After the

conference, Roberts called Chapman to make sure that he was going to be at work

the next day.

The following morning, September 1, 2004, Chapman met Roberts,

Scarletta and Woodley at the Crowley store.  At that time, Roberts told Chapman

that he was being fired for failing to grow the store by 25 customers in the month

of August.  On that same date, Chapman called ARI's 1-800 line and reported that

he had been discriminated against, because he had been fired and replaced by a

white co-worker.  (Exhibit 18).  Chapman was replaced by David Richard, a white

male, who had been working at the Eunice, Louisiana store.

At the time that Roberts was promoted into the Regional Manager position, there were 16 general managers who reported to him; eight general managers were white and eight general managers were African-American.  After Roberts became Regional Manager, he terminated 10 of these general managers, five of whom were white and five of whom were African-American.  After various restructuring in the region, nine general managers now report to Roberts, five of whom are white and four of whom are African-American.

## Conclusions of Law

*Quentin Chapman*

To prevail on a Section 1981 claim, a plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of intentional discrimination. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).[4]  To establish an inference of race discrimination, consistent with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must show a *prima facie* case by establishing that the (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position; (3) plaintiff suffered an

---

[4]The Fifth Circuit has held that discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII.  *Id.* at 281*; Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).

adverse employment action, and (4) plaintiff was replaced with a person who is not a member of the protected class. *Id.; Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999) (*citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).

In this case, Chapman is African-American, which is a protected class.  He was qualified, as he was promoted to general manager and remained in that position for over a year.  He suffered an adverse employment action, *i.e.*, termination.[5]  He was replaced by a white male, David Richard, who had been working at the Eunice, Louisiana store.  Thus, Chapman has made out a *prima facie* case.

If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason.  *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002).  This burden of production "can involve no credibility assessment."  *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Here, defendants assert that Chapman was fired because of a legitimate, non-discriminatory reason, that is, for poor performance as shown by the financial

---

[5]It is beyond dispute that a termination constitutes an adverse action.  *Pegram*, 361 F.3d at 283 (*citing Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001)).

reports of the Crowley store.  Specifically, defendants contend that Chapman failed to satisfy the requirement set forth in Roberts' July 31, 2004 written counseling to grow the store by 25 new customers in August.  This is supported by Roberts' testimony, and confirmed by the Counseling Form documenting Roberts' conversation with Chapman.  (Exhibit 14).  Thus, defendants have produced evidence of a legitimate, nondiscriminatory reason for their actions.

Finally, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the employer's nondiscriminatory explanation is pretextual. *Raggs*, 278 F.3d at 468; *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).  Chapman contends that the reason advanced by ARI for his firing was pretextual, because the 25-customer goal was unattainable, and that Roberts knew that to be the case.

The record reflects that prior to Roberts' promotion on July 7, 2004 to Regional Manager, ARI's Crowley store had lost customers from July to November, 2003 and in February, 2004.  (Exhibit 21).  The store gained customers in December, 2003, January, 2004, and March to June, 2004.  In July, 2004, which was the month that Roberts came onboard as regional manager, the store lost 18 customers.

8

According to ARI's reports, the most customers that the Crowley store had ever gained in one month  during Chapman's term as General Manager was 14 (in April, 2004).  At no time did the Crowley store *ever* gain 25 customers in any month either during this period or *after* Chapman's termination.  Additionally, Roberts testified that he did not give this goal of 25 new customers to any other general managers in his region.  Thus, it is apparent to this Court that the "25 customer" goal set by Roberts was unrealistic, as well as unattainable, for Chapman.

Although defendants argue that there is "absolutely no evidence, other than Chapman's own self-serving testimony," that the 25-customer goal was unreasonable or unattainable, the Court finds that the numbers speak for themselves.  For Roberts to impose such an arbitrary number for a consistently underperforming store was not only unrealistic, but illogical.  Further, Chapman's successor, David Richard, also failed to achieve this goal, but was not terminated. (Exhibit 21).  This fact gives further support to Chapman's assertion that the reason given for his termination was  pretextual.  Accordingly, the Court finds that Chapman has met his burden of proof on this issue.

Although the evidentiary burdens shift between the parties in the *McDonnell Douglas*  framework, "[t]he ultimate burden of persuading the trier of

9

fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Raggs*, 278 F.3d at 463 (*quoting Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  While the reason for Chapman's termination was pretextual, the Court finds that Chapman has failed to show that Roberts fired him for discriminatory reasons.

The plaintiff's evidence of Roberts' racial animus is weak. As evidence of racial animus, Chapman cites an incident in which Roberts threw the contents of a desk belonging to Dwayne Terrance into the middle of the floor, and told Terence to pick them up.[6]  Chapman also testified about an incident where Chad LeBlanc, a white employee who was the sales manager under Chapman, went to another ARI store while off-duty and made racial remarks about Chapman, referring to him as a "nigger", which was reported to Roberts.  Finally, there was evidence that Roberts, on one occasion, instructed an African-American male, who was working in a "white collar" job, to perform manual labor by lifting and moving television sets and other equipment in the store.

However, the first incident was isolated, and not directed against Chapman. In fact, Chapman was not even present when the altercation between Roberts and

_____

[6]Terrance, who is African-American, was a CAM at the Crowley store.

Terrance occurred. Additionally, there is no evidence that this incident was racially motivated. The second incident was not verified by any other testimony or documentation.  In any event, the Fifth Circuit has held that such unattributed "stray remarks" are insufficient to support an inference of discrimination.  *Raggs*, 278 F.3d at 470 (*citing E.E.O.C. v. Texas Instruments, Inc*., 100 F.3d 1173, 1180 (5th Cir. 1996)). It follows, therefore, that the failure to discipline LeBlanc for this "stray remark" is also insufficient to support an inference of discrimination. Finally, the incident involving the "white-collar" employee being asked to lift and carry television sets does not support an inference, in and of itself, of racial animus.  Indeed, the evidence is that Roberts himself assisted in moving the equipment.

Evidence of pretext alone may, but will not always, sustain a fact-finder's inference of unlawful discrimination. *Id*. The ultimate question in cases alleging employment discrimination is whether the plaintiff was the victim of intentional discrimination.  *Price v. Federal Express Corp*., 283 F.3d  715, 722 (5th Cir. 2002) (*citing Reeves v. Anderson Plumbing Products, Inc*., 120 S.Ct. 2097, 2108).

In this case, while the plaintiff has made out his *prima facie* case and has set forth sufficient evidence to reject the defendants' explanation of his firing as pretext, there is insufficient evidence to prove racial discrimination as the basis for

the complained of employment action.  Simply stated, the strength of the

plaintiff's *prima facie* case, as well as the plaintiff's proof of pretext, is

insufficient, in light of the rest of the evidence, including that evidence which

supports ARI's case, to show racial discrimination. *Price*, 283 F.3d at 719; *see*

*also Rubenstein v. Administrators of the Tulane Educational Fund,* 218 F.3d 392,

400 (5th Cir. 2000).

In this case, the Court finds that the evidence was not sufficient to conclude

that Roberts (and thus ARI) unlawfully discriminated against Chapman. There is

no doubt that Roberts was abrupt with Chapman.  It may well be that Roberts put

Chapman into a position in which he could not succeed, and in which he was

likely to be fired.  However, the proof of racial animus in Chapman's firing is

completely absent.  There is no evidence that Roberts ever used any racially

discriminatory terms, ever acted in a racially objectionable manner or exhibited

any other action which the Court could characterize as showing racial prejudice.

The fact that Wooley agreed with Roberts that Chapman should be fired, the

fact that Roberts continues to have a high percentage of African-American general

managers reporting to him and the fact that there is ample support in the record to

rebut racial animus by ARI, compels the Court to conclude that the plaintiff has

simply failed to carry his burden of proving, by a preponderance of the evidence,

12

that racial discrimination was the basis for Roberts firing Chapman.

Accordingly, the Court will enter judgment in favor of defendants, Aaron Rents, Inc. and Brock Roberts, and dismiss Chapman's claims **WITH PREJUDICE**.

### Findings of Fact

*Everette Robertson*

On May 20, 2002, ARI hired Robertson as a product technician at its store in Lafayette, Louisiana.  During the course of his employment with ARI, Robertson served as an accounts assistant, sales assistant, sales manager, and CAM.  In March, 2004, Robertson was promoted to General Manager of ARI's Rayne, Louisiana store at a salary of $43,000.00 per year.

The store in Rayne had been acquired by ARI from local owners.  The store was small, and was located geographically near the store in Crowley.  Because the store in Rayne did not meet ARI standards for physical appearance, significant capital investment was required to improve the store's appearance and displays.  Additionally, the lease on the store was set to expire, and a renewal for either a three or five year term was required.

Because the store was under-performing financially, and because of the need for significant capital improvements and a renewed lease term of three to five

13

years, in July, 2004, ARI decided to close the Rayne store.  ARI's president, Ken

Butler, made the decision to close the location. Apparently, the decision to lay off

Robertson was not made by Roberts, but was rather made by ARI President Butler

and agreed to by Divisional Vice President, Dave Buck.

On September 1, 2004, Roberts met with Robertson, and told him that he

was being laid-off because of the Rayne store's closure.  He told Robertson that no

general manager positions were available at that time.

When the Rayne store closed, two product techs, both of whom are African-

American, were terminated.  The CSR, Carletta Papillion, who is African-

American, was transferred to the same position in New Iberia.  The sales manager,

Eric Hoffman, who is white, was sent to Crowley.  Winnie Bouillion, the CAM,

who is white, was transferred to Crowley and demoted to an MT position.  At the

time of Robertson's termination, Roberts had already filled the general manager

positions in the nearby Crowley and Eunice stores.

Two days after Robertson's termination, Chris Savoca, who was the general

manager at ARI's store in Lafayette, Louisiana, told Roberts about a CAM

opening at that location.  Savoca asked Roberts if he could hire Robertson for the

position.  After Roberts authorized Robertson's hiring at a salary of $35,000.00,

Savoca called Robertson to inform him about the job.  However, Robertson did

not return to work.[7]

## **Conclusions of Law**

*Everette Robertson*

To reiterate, a plaintiff must show a *prima facie* case by establishing that the (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position; (3) plaintiff suffered an adverse employment action, and (4) plaintiff was replaced with a person who is not a member of the protected class. *Id.; Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999) (*citing McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817).  In cases involving a reduction in force where the plaintiff has not been replaced, as is the case here, the fourth element may be established by showing that members outside the protected class remained in similar positions after the discharge.  *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 318 (5th Cir. 1997).

Here, it is undisputed that Robertson meets the first three criteria – he is an African-American, was terminated, and was qualified for the position.  However, Robertson cannot meet the fourth element, *i.e*., that he was replaced with a person from outside of the protected class.  It is undisputed that the Rayne store was

---

[7] The evidence is disputed as to whether or not Robertson initially agreed to take this position and simply never showed up for work, or whether Robertson never returned the telephone call made to offer him the position.

closed, and that, therefore, no one replaced Robertson as the general manager at the Rayne store; no such position existed after the store's closure.

Clearly, Robertson has failed to prove that he was replaced with a person from outside the protected class, since he was not replaced at all – the position was simply eliminated when the store was closed.

Additionally, no general manager positions were open at any of the other ARI locations in the area. Eliminating a position for economic reasons during a reduction in workforce is a valid, non-discriminatory reason for terminating an employee. *Tucker v. SAS Institute, Inc*., 462 F.Supp.2d 715, 727 (N.D. Tex. 2006) (*citing Equal Employment Opportunity Commission v. Texas Instruments, Inc*., 100 F.3d at 1181).

Finally, Robertson was offered (or was to be offered) another position with ARI, albeit a lesser position at a reduced salary.  This offer to Robertson was similar to offers made to other employees at the Rayne store, both white and African-American.

Because Robertson has not met his burden of proving a *prima facie* case, it is not necessary to consider the remaining prongs under *McDonnell Douglas*.[8]

---

[8]Thus, it is not necessary to consider evidence as to the plaintiff's superior qualification, which is relevant to the issue of pretext under the third prong of the *McDonnell Douglas* framework.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (citing

Accordingly, the Court will enter judgment in favor of defendants, Aaron Rents, Inc. and Brock Roberts, and dismiss Robertson's claims **WITH PREJUDICE**.

### Conclusion

Based on the foregoing reasons, the Court will enter judgment in favor of defendants, Aaron Rents, Inc. and Brock Roberts, and the remaining claims asserted by Chapman and Robertson are **DISMISSED WITH PREJUDICE**.

Signed November 9, 2007, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

*Deines v. Texas Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir.1999)).